[No. 26892. Department One. April 4, 1938.]

THE STATE OF WASHINGTON, *Respondent,* v. STANLEY KNAPP *et al., Appellants.*[1]

[1]Reported in 77 P. (2d) 985.

*Joseph J. Lavin,* for appellants.

*Ralph E. Foley* and *A. O. Colburn,* for respondent.

MAIN, J.—Stanley Knapp, alias Ernest Stowell, Leroy Knapp, alias Robert Montgomery, and Herbert Allen, alias Clarence Hoff, were charged by information with murder in the first degree. The case went to trial against the two Knapps, Allen not having been apprehended. The jury returned a verdict of guilty in each case and a special finding in favor of the death penalty. The motion for new trial being made and overruled, judgment and sentence were entered, from which the defendants appeal.

February 15, 1937, the appellants and Allen entered the Security State Bank of Spokane for the purpose of robbing it. While in the process of such robbery, a customer, one William E. Walker, entered the bank, was shot by Stanley Knapp, and died later during the same day. The robbers escaped with money in the sum of approximately forty-five hundred dollars. Later, the appellants were arrested in the state of California and returned to Spokane county for trial. When the case came on for trial, counsel for the appellants conceded that they were guilty of murder in the first degree, and that the only question which the jury would be required to pass upon was whether they should be given life imprisonment or whether the death penalty should be imposed.

The appellants make three principal contentions, claiming (a) that the trial court erred in overruling

their motion for new trial, because of alleged misconduct of the deputy prosecuting attorney in his opening argument to the jury; (b) that the court erred in refusing to instruct the jury to disregard the statements made by the deputy prosecuting attorney; and (c) misconduct of the jury.

With reference to the statements made by the deputy prosecuting attorney, counsel for the appellants filed an affidavit setting forth his version of what had been said to the jury. The deputy prosecuting attorney filed an affidavit setting forth his version. The court did not make a finding as to which of the respective statements was true. In the opinion overruling the motion for a new trial, the court said that the statement was with reference to the effect of the imposition of a sentence or penalty of life imprisonment.

The language, having been used in the presence of the court, whatever the facts were, should have been certified by the court and made a part of the statement of facts. Things that happen in the presence of the court cannot be shown by affidavits. In *Loy v. Northern Pac. R. Co.*, 77 Wash. 25, 137 Pac. 446, it was said:

"On the question of the misconduct of counsel, it appears that the objectionable remarks were made in the presence of the court during the trial and might have been preserved, either by the stenographer, or upon request the court itself might have reduced them to writing. This, however, was not done. Upon motion for new trial, the defendant's counsel, by affidavit, set forth his version of the objectionable remarks. The plaintiff's counsel answered, denying and setting forth their version of the same. The trial judge has included both affidavits in the statement of facts but does not certify as to which, if either, correctly contains the substance of the language used. The language having been used in the presence of the court, it should have been certified to by the court and made a

part of the statement of facts. To permit such facts to be presented by affidavits, gives rise to an unseemly contest between counsel upon matters that occurred in open court during the progress of the trial, and in the interest of orderly procedure, should not be tolerated. The objectionable language not having been preserved in the statement of facts, it cannot here be reviewed."

The cases of *State v. Johnston,* 83 Wash. 1, 144 Pac. 944, and *State v. Brady,* 138 Wash. 421, 244 Pac. 675, express the same view.

However, it is admitted by the respondent that the deputy prosecuting attorney, in his opening argument to the jury, said, in effect, that it was a matter of common knowledge that life sentences mean only ten or twelve years in prison.

In the case of *State v. Stratton,* 170 Wash. 666, 17 P. (2d) 621, it was held that similar and more damaging remarks along the same line did not constitute reversible error. It is said, however, that the remarks in that case were not objected to by the defendant, while, in the case now before us, counsel for the appellants objected to the language and moved the court to instruct the jury to disregard it.

It is true that, in the *Stratton* case, no objection was taken to the argument or a request made to the court to instruct the jury to disregard it, and it was said that that was necessary in order to have it reviewed unless it amounted to misconduct so flagrant that an instruction would not cure it. The court, notwithstanding this, went further in that case and, in effect, held, on the merits, that the reference to the ordinary length of life sentences was not prejudicial. It was said:

"The suggestion that the law prohibits the parole of a life prisoner may be dismissed in our consideration of the case, because if the jury knew that, they would, of course, pay no attention to it. But suppose they

listened, without knowing such to be the law, still there was nothing prejudicial or that constituted reversible error about the argument."

In the case of *State v. Bradley*, 175 Wash. 481, 27 P. (2d) 737, the same thing occurred, and it does not appear in that case whether there was an objection or a request to the court to instruct the jury to disregard the statements, but it was held that they were not reversible error and were not prejudicial.

On the matter of the request to the court to instruct the jury to disregard the statements, the *Stratton* case is authority for the proposition that such language did not constitute misconduct of such flagrance that it could not be cured by an instruction. In the present case, the court had instructed the jury that statements of the attorneys in the case during the trial and in their arguments were not evidence and should not be considered as such. When the request was made to the court to instruct the jury to disregard the statement of the deputy prosecuting attorney as to what sentence for life imprisonment meant, the court said that it had "heretofore instructed the jury that the arguments of counsel were not evidence in the case."

Even if it be assumed that it was necessary for the court to instruct the jury to disregard such statements, the admonition given by the court was sufficient for that purpose. While the remarks of the deputy prosecuting attorney are not to be commended, they do not constitute reversible error.

Two of the jurors filed affidavits to the effect that, if they had had any assurance that life imprisonment meant life imprisonment and that the defendants would be required to stay in the penitentiary for the rest of their lives, then the jury would not have inflicted the death penalty, and that the jurors making

the affidavit stated that they would not have agreed to any verdict recommending the death penalty.

The verdict of the jury cannot be impeached in this manner. Affidavits for this purpose can only be considered in so far as they state the facts. It was not for the jury to say what effect the remarks had on the verdict. It was for the court to say whether the remarks had a prejudicial effect upon the minds of the jurors. *Hafner v. United States Fidelity & Guaranty Co.,* 126 Wash. 670, 219 Pac. 16; *Hamilton v. Snyder,* 182 Wash. 688, 48 P. (2d) 245. There are many other cases that might be cited in support of this proposition, but it is so well-settled that there is no occasion to multiply the citation of authorities.

In the affidavit of one of the jurors, he states that he was influenced by statements in the deliberating room with reference to the police record of the appellant Stanley Knapp, who, as he says, it was stated, had served a sentence in the state reformatory at Chehalis and had been released on good behavior. The affidavit does not state which of the jurors made the statement. It is altogether general, and no error can be predicated upon it. There is no showing that the belief was asserted that the accused was guilty of the crime for which he was on trial by reason of any past conduct, as in the case of *State v. Parker,* 25 Wash. 405, 65 Pac. 776. As said in *State v. Figlenski,* 169 Wash. 38, 13 P. (2d) 5:

"Jurors possess at least average intelligence and integrity, and they are sworn to return a verdict in accordance with the law and the evidence."

Whatever may have been said in the jury room with reference to this particular matter, it cannot be said that it had any influence upon the verdict, or that it was prejudicial.

■ We now come to the question of whether one of the jurors entered upon the trial of the case in a biased and prejudiced state of mind. This juror, immediately after the verdict, talked with counsel for the appellants and a reporter for one of the Spokane papers and told them matters pertaining to the deliberations of the jury. Later, he talked with the father of the appellants on two occasions, one, the day following the verdict, and the other, two or three days later. The father makes an affidavit as to these conversations, and on each occasion, as appears in the affidavit, the juror expressed a sympathetic regard for the father and his family and the regret that it was necessary, under the evidence, to find for the death penalty. At the conclusion of the second talk, the juror, as the affidavit says, stated:

"I would like to have these two punks turned over to me."

The *voir dire* of the juror appears in the record, along with these affidavits, and, after considering what the juror said on being examined on the *voir dire*, and what he said as shown by the affidavits, we find no substantial basis for sustaining the charge that the juror entered upon the trial of the case with a biased and prejudiced mind.

The matter, however, of granting a motion for new trial for this reason rests in the discretion of the trial court and will not be disturbed upon appeal, in the absence of a showing that that discretion has been abused. *Mathisen v. Norton,* 187 Wash. 240, 60 P. (2d) 1. While the matter is in the discretion of the trial court, as stated, it appears to us the trial court rightly refused to grant a new trial on the ground that this particular juror had entered upon the trial with a biased and prejudiced state of mind. It must be admitted that the juror was disposed to do more talking

than good taste and good sense would dictate, but what he said did not constitute conduct which would authorize the granting of a new trial.

The judgment will be affirmed.

STEINERT, C. J., HOLCOMB, GERAGHTY, and SIMPSON, JJ., concur.

